UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

CLARKSON S. FISHER FEDERAL
BUILDING & U.S. COURTHOUSE
402 EAST STATE STREET
TRENTON, N.J. 08608
609-989-2009

**NOT FOR PUBLICATION**

February 19, 2019

**LETTER OPINION**

VIA CM/ECF
All counsel of record

Re:   *Joey Jackson v. State of New Jersey Department of Human Services Division of Developmental Disabilities, et al.*
      Civil Action No. 17-118 (MAS) (LHG)

Dear Counsel:

This matter comes before the Court upon Defendants State of New Jersey Department of Human Services Division of Developmental Disabilities ("DDD") and Jonathan Seifried's ("Seifried"), in his official capacity as Assistant Commissioner of DDD, (collectively, "Defendants") Motion to Dismiss. (ECF No. 226.) Plaintiff Joey Jackson ("Plaintiff") opposed (ECF No. 245), and Defendants did not reply. The Court has carefully considered the parties' submissions[1] and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies in part and grants in part Defendants' Motion to Dismiss.

**I.   Background**

In January 2017, Plaintiff filed a *pro se* complaint with an application to proceed *in forma pauperis* ("IFP"). (ECF Nos. 1-1, 1-3.) The Court granted Plaintiff's IFP application and further appointed Plaintiff pro bono counsel. (ECF Nos. 111, 155.) Counsel then filed an amended complaint, which sought damages and injunctive relief from DDD under: (1) 42 U.S.C. § 1983 ("Section 1983") for substantive and procedural due process violations; and (2) N.J.S.A. 10:6-2(c) for New Jersey Civil Rights Act ("NJCRA") violations. (ECF No. 163.)

DDD moved to dismiss the amended complaint. (ECF No. 177.) On August 6, 2018, the Court granted DDD's motion, finding good cause to allow Plaintiff to file a second amended

---

[1] The Court also notes that Plaintiff has personally filed numerous letter submissions to the Court that contain personal, and often unrelated, information. (*See, e.g.*, ECF Nos. 262-321.) The Court reiterates its previous directive that Plaintiff's submissions to the Court should be provided through his attorney. (*See, e.g.*, ECF No. 221.) The Court has not considered Plaintiff's personally-filed correspondence in deciding the instant motion.

complaint ("SAC") because he failed to name a state official as a defendant. (Aug. 6, 2018 Order at 2, ECF No. 221.)

Plaintiff filed the SAC on August 16, 2018, naming DDD and Seifried as defendants. (SAC, ECF No. 222.) Plaintiff's SAC repeats the same allegations as his amended complaint, *i.e.*, Defendants violated his due process rights by shifting from a contract-based system of service reimbursement to a fee-for-service reimbursement system. (*See generally* SAC.) Namely, Plaintiff argues that prior to the reimbursement system shift, he received twenty-four-hour-a-day, seven-days-a-week supervision for his "mild intellectual disabilities and physical disabilities." (*Id.* at 6-7.) Plaintiff avers that after the shift, his "approved [home and medical] services were revoked, reduced and/or are not being implemented with care." (*Id.* at 7.)

## II. Legal Standard

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure[2] 12(b)(1) and 12(b)(6), arguing they are immune from suit under the Eleventh Amendment and the doctrines of sovereign and qualified immunity. (Defs.' Moving Br. 3-4, ECF No. 226.) Under Rule 12(b)(1), a court may grant dismissal for lack of subject matter jurisdiction. The plaintiff bears the burden of proving jurisdiction exists. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. *Id.* A facial challenge considers the facts in the pleadings as true, in the light most favorable to the plaintiff. *Id.* A factual challenge allows the Court to consider evidence outside the pleadings. *Id.*

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[ ] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff . . . ." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III. Discussion

Defendants argue the Eleventh Amendment and principles of sovereign immunity bar Plaintiff's suit. (Defs.' Moving Br. 5, 8, 12.) Defendants also argue Plaintiff lacks standing to

---

[2] All references to Rules herein refer to the Federal Rules of Civil Procedure.

pursue relief under the *Ex Parte Young* doctrine, and Seifried is entitled to the protection of qualified immunity. (*Id.* at 12.) In response to Defendants' sovereign immunity arguments, Plaintiff argues he raised a valid cause of action under Section 1983. (Pl.'s Opp'n Br. 6, ECF No. 245.) Plaintiff further argues Defendants' *Ex Parte Young* argument fails because he adequately alleged an ongoing harm. (*Id.* at 14.) Finally, Plaintiff argues Defendants' qualified immunity argument is premature, and further fails to recognize that the Medicaid Act was established prior to his suffering harm. (*Id.* at 10.) The Court addresses each argument in turn.

### a. 42 U.S.C. § 1396n(c)(2)(A) of the Medicaid Act[3]

The Court must first determine whether Plaintiff pled a valid cause of action enforceable under Section 1983. Plaintiff presents two cases in support of his proposition that 42 U.S.C. § 1396n(c)(2) creates individual rights enforceable under Section 1983: *Sabree*, 367 F.3d 180, and *Dultz v. Velez*, 726 F. Supp. 2d 480 (D.N.J. 2010).[4] (*Id.* at 7-10.) In *Sabree*, the Third Circuit noted that "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Id.* at 191 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 541 U.S. 1, 28 (1981)).

The *Sabree* Court applied the test announced in *Blessing v. Freestone*, and held that 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10), and 1396d(a)(15) of the Medicaid Act contained rights-creating language for individuals, thus creating enforceable rights under Section 1983. 367 F.3d at 189 (citing *Blessing*, 520 U.S. 329 (1997), as clarified by the Supreme Court in *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)). The *Sabree* Court, however, carefully limited its holding to "the narrow provisions invoked by [the] plaintiffs," and reserved on deciding whether the Medicaid Act as a whole creates rights enforceable under Section 1983. *Id.* at 191. In *Dultz*, the district court, relying on *Sabree* and *Sable v. Velez*, No. 09-2813, 2009 U.S. Dist. LEXIS 96360,

---

[3] "Title XIX of the Social Security Act, codified at 42 U.S.C. §§ 1396-1396v and popularly known as the 'Medicaid Act,' established a cooperative federal-state program under which the federal government furnishes funding to states for the purpose of providing medical assistance to low-income individuals." *Sabree ex rel. v. Richman*, 367 F.3d 180, 182 (3d Cir. 2004) (internal quotation marks and citation omitted). Although "[s]tates are not required to participate in the program," "states that do accept federal funding must comply with the Medicaid Act and with regulations promulgated by the Secretary of Health and Human Services . . . ." *Id.* "A state that fails to comply . . . runs the risk of having its funding revoked by the Secretary." *Id.* (citing 42 U.S.C. § 1396c).

[4] "Section 1983 is a vehicle through which federal rights may be enforced by plaintiffs who suffered a deprivation at the hand of a state official." *Dultz*, 726 F. Supp. 2d at 487 (citation omitted). "In *Sabree*, the Third Circuit held that . . . certain provisions of the federal Medicaid Act created rights enforceable via [S]ection 1983. . . . In so holding, it applied the test announced in *Blessing v. Freestone*, 520 U.S. 329 (1997), as clarified by the Supreme Court in *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)." *Id.* That three-part test requires the federal statute to "(1) create specific, individually enforceable rights, (2) use 'rights-creating language,' and (3) not preclude individual enforcement." *Id.* (citing *Sabree*, 367 F.3d at 183).

at *2 (D.N.J. 2009), *overruled on other grounds by Sable v. Velez*, 388 F. App'x 235 (3d Cir. 2010), found that 42 U.S.C. § 1396a(r)(2)(A) created an enforceable right pursuant to Section 1983. 726 F. Supp. 2d at 487-89. Therefore, the cases Plaintiff cites do not directly stand for the proposition that 42 U.S.C. § 1396n(c)(2)(A) creates an individual right enforceable under Section 1983.

The Sixth Circuit and several district courts, including our sister court in the Eastern District of Pennsylvania, however, have held that Section 1396n(c)(2)(A) confers individual rights enforceable under Section 1983. *See Wood v. Tompkins*, 33 F.3d 600, 610-12 (6th Cir. 1994) (holding Section 1396n(c)(2)(A) confers individual rights enforceable under Section 1983); *see also Cohen v. Chester Cty. Dep't of Mental Health/Intellectual Disabilities Servs.*, No. 15-5285, 2016 WL 3031719, at *26-27 (E.D. Pa. May 25, 2016) (same); *Masterman v. Goodno*, No. 03-2939, 2004 U.S. Dist. LEXIS 354, at *29 (D. Minn. Jan. 2004) (same); *but see Santaniello v. Sweet*, 04-806, 2010 U.S. Dist. LEXIS 35208, at *12 (D. Conn. Mar. 31, 2010) (finding Section 1396n(c)(2)(A) "does not provide a private right of action . . . .").

Here, the Court finds the significant persuasive authority discussed above compelling. Moreover, Section 1396n(c)(2)(A) requires states that operate waiver plans to provide the federal government with "assurances" that "necessary safeguards (including adequate standards for provider participation) have been taken to protect the health and welfare of individuals provided services under the waiver and to assure financial accountability for funds expended with respect to such services . . . ." *See also Cohen*, 2016 WL 3031719, at *8. This language is similar to the language the *Sabree* Court interpreted as evidencing rights-creating language because it also demonstrates individuals are "the intended recipients of medical assistance from" the State. *Sabree*, 367 F.3d at 193. Thus, the Court concludes that Section 1396n(c)(2)(A) creates an individual right enforceable under Section 1983.

### b. Sovereign Immunity

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The United States Supreme Court has interpreted the Eleventh Amendment as "provid[ing] states with immunity from suit for monetary relief in federal court not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Gattuso v. N.J. Dep't of Human Servs.*, 881 F. Supp. 2d 639, 645 (D.N.J. 2012) (citing *Hans v. Louisiana*, 134 U.S. 1, 13-14 (1890); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67-68 (1996)). "'This immunity extends to state agencies and departments' and the officers of state agencies acting in their official capacity." *Estate of Tara O'Leary ex rel. v. Sloan*, No. 12-2625, 2015 WL 5335054, at *6 (D.N.J. 2015) (quoting *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). "Eleventh Amendment immunity applies to claims made under federal law as well as state law." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104-06 (1984); *King v. Christie*, 981 F. Supp. 2d 296, 310 n.11 (D.N.J. 2013)).

There are three exceptions to Eleventh Amendment immunity. First, Congress may abrogate sovereign immunity when a statute is passed "pursuant to congressional power under [Section] 5 of the Fourteenth Amendment to enforce the provisions of that amendment." *MCI*

4

*Telecomm. Corp.*, 271 F.3d at 503. "Second, a state may waive sovereign immunity by consenting to suit." *Id.* Third, the *Ex Parte Young* doctrine provides that "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *Id.* at 506 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Section 1983 "creates a cause of action against any person who, acting under color of state law, deprives an individual of rights secured by the Constitution or by federal statute." *Urella v. Pa. State Troopers Ass'n*, 628 F. Supp. 2d 600, 605 (E.D. Pa. 2008). "The Supreme Court has held that Congress did not abrogate a state's Eleventh Amendment immunity in enacting [Section] 1983." *Id.* Moreover, "[s]tates are not 'persons' within the meaning of [Section] 1983 and, therefore, cannot be among those held liable for violations of the civil rights statute. Since Congress expressed no intention of disturbing the states' sovereign immunity in enacting [Section] 1983, these suits, when brought against a state, are barred by the Eleventh Amendment." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) (citing *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 66 (1989)).

Here, although Plaintiff successfully demonstrated that Section 1396n(c)(2)(A) creates a right enforceable under Section 1983, Plaintiff does not support his argument that a right actionable under Section 1983 overcomes Defendants' sovereign immunity argument. Specifically, Plaintiff fails to cite to any authority demonstrating that he may bring a suit for damages against the State. The Court, accordingly, grants Defendants' motion to dismiss with respect to DDD.

The Court next turns to Defendants' sovereign immunity arguments regarding Seifried. Defendants argue the *Ex Parte Young* doctrine does not apply under the instant facts because Plaintiff lacks standing. Specifically, Defendants argue Plaintiff fails to establish he is suffering from continuing or ongoing harm, but rather the only harm he experienced was the "transition of adult services under the program from a contract-reimbursement system to a fee-for-service system." (Defs.' Moving Br. 13.)

Defendants' argument is not persuasive. Plaintiff named Seifried—a state officer—in his official capacity, and Plaintiff seeks prospective injunctive and declaratory relief. Moreover, Defendants wholly fail to address Plaintiff's assertion that he has suffered, and continues to suffer, from harm as a result of the reimbursement system shift. Specifically, Plaintiff alleged:

> [Plaintiff] has been and will continue to be forced to live in his apartment without the necessary supervision to monitor his critical health needs, including his cardiac and diabetic conditions, as well as his use of a CPAP device for sleeping, or to assist him with his home care in a poor hygienic environment . . . .
>
> . . . .
>
> . . . . As a direct and proximate result of DDD's shift to fee-for-services, [Plaintiff's] State-approved residential, employment, community and recreational, medical, and/or financial services funded and mandated by the Medicaid Act, have been

5

significantly reduced and continues to substantially hinder [Plaintiff's] access to necessary home and medical services that enable him to meet his critical support needs and to maximize his developmental potential in a manner that is least restrictive to his personal liberty.

(SAC ¶¶ 39, 40.) In fact, Defendants appear to concede the *Ex Parte Young* doctrine likely applies, stating, "Seifried has been named individually in his official capacity, so prospective relief appears to satisfy the *Ex Parte Young* exception and potentially has traction." (Defs.' Moving Br. 12.) Therefore, because Defendants' standing argument is not persuasive, and Plaintiff successfully pled an ongoing violation against a state official in his official capacity, the Court finds the *Ex Parte Young* exception applies.

### c. Qualified Immunity

"A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotations and citation omitted). A court views those inquiries "in the light most favorable to the party asserting the injury." *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

Here, Defendants' qualified immunity arguments fail because the Medicaid Act was clearly established before 2017, the time Plaintiff alleges he first began suffering from the change to fee-for-services. (*See* SAC ¶ 26.) Defendants' assertion that there was no "controlling authority" or "robust consensus of cases of persuasive authority" lacks merit, as the Court's inquiry is whether the Medicaid Act existed at the time of Defendants' actions. *See, e.g.*, *Thrower v. Pennsylvania*, 873 F. Supp. 2d 651, 657 (W.D. Pa. 2012) ("This Court is not concerned over whether the . . . [d]efendants, at the time they acted, knew they could be sued; instead, the Court must focus on whether the *rights themselves* were clearly established at the time of the alleged misconduct."). Moreover, Plaintiff is suing Seifried in his official capacity, but the qualified immunity defense "is only available when government officials are sued in their personal, not official, capacity." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 252 (3d Cir. 2005) (citing *Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990)). The Court, accordingly, denies Defendants' Motion to Dismiss with regards to Seifried.

## IV. Conclusion

The Court grants in part and denies in part Defendants' Motion to Dismiss Plaintiff's SAC. (ECF No. 226.) Section 1396n(c)(A) creates an individual right enforceable under Section 1983. The Court grants Defendants' Motion to Dismiss with regards to DDD.

6

The Court denies Defendants' Motion to Dismiss with regards to Seifried. The Court will enter an Order consistent with this Letter Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**